763 So.2d 528 (2000)
DEALERS ACCEPTANCE CORPORATION, a Florida corporation, Appellant,
v.
UNITED PACIFIC INSURANCE COMPANY, a foreign corporation, Englewood Quality Motors, Inc., Richard B. Payne and Sherry L. Payne, Appellees.
No. 4D99-1742.
District Court of Appeal of Florida, Fourth District.
July 26, 2000.
Patrice A. Talisman of Hersch & Talisman, P.A., Miami, and Valle & Craig, P.A., Miami, for appellant.
W. Frank Greenleaf and Michael Jay Rune, II of Welbaum, Guernsey, Hingston, Greenleaf & Gregory, L.L.P., Coral Gables, for Appellee-United Pacific Insurance Company.
TAYLOR, J.
In this action to recover on a motor vehicle dealer's license bond, Dealers Acceptance Corporation appeals from a summary judgment entered in favor of United Pacific Insurance Company. We affirm the trial court's ruling that the retail installment sales finance company is not covered by the surety bond issued pursuant to section 320.27(1)(b), Florida Statutes.
United Pacific Insurance Company ("Union Pacific") issues surety bonds to motor vehicle dealers required under Chapter 320, Florida Statutes. In April 1995 Union Pacific issued a surety bond in the amount of $25,000 on behalf of motor vehicle dealer Englewood Quality Motors, Inc. d/b/a Easy Ed's Kar Korner ("Easy Ed's"). As required by section 320.27, Florida Statutes, the bond was to run "in favor of any person in a retail or wholesale transaction who shall suffer any loss as a *529 result of any violation of the[se] conditions."
Dealers Acceptance Corporation, a retail installment financier of motor vehicles, had an agreement with Easy Ed's to provide financing for its customers. Under the agreement, Easy Ed's and the customer would agree upon the car to be sold, its price, and any down payment. Easy Ed's would then submit the buyer's order and credit application to Dealers Acceptance. Dealers Acceptance would in turn conduct a credit bureau search and decide whether to extend credit on the sale. If Dealers Acceptance agreed to extend credit, it would pay Easy Ed's sixty percent of the principal, i.e., the amount of the car's purchase price to be financed, and receive an assignment of the purchaser's installment sale contract. Afterwards, the purchaser of the vehicle would make installment payments directly to Dealers Acceptance. Once fully paid, Dealers Acceptance would pay Easy Ed's the remaining forty percent of the principal and retain for itself the interest paid.
The material facts in this case are not in dispute. Dealers Acceptance provided financing to three Easy Ed's customers who later defaulted on their contracts when Easy Ed's failed to give them title certificates to their vehicles. After repossessing the vehicles, Dealers Acceptance demanded the titles from Easy Ed's. Easy Ed's refused and eventually went out of business without delivering the titles to Dealers Acceptance.
Thereafter, Dealers Acceptance made a claim under the bond issued by United Pacific for payment of the unpaid balance of the defaulted contracts. United Pacific denied the claim. Dealers Acceptance then filed suit against United Pacific to collect under the statutory motor vehicle dealer's license bond. United Pacific moved for summary judgment on the ground that Dealers Acceptance is not a "person in a retail or wholesale transaction" with Easy Ed's, as required by the terms of the bond and Chapter 320. According to United Pacific, the statute is designed to protect retail and wholesale consumers and a finance company, such as Dealers Acceptance, "is not within the class of persons afforded coverage by the subject bond." The trial court agreed and entered summary final judgment in favor of United Pacific.
In ruling that United Pacific was entitled to summary judgment against Dealers Acceptance, the trial court looked at the plain language of the statute, which is tracked in the surety bond issued by United Pacific. The statute, which requires a motor vehicle dealer to post a surety bond or irrevocable letter of credit before conducting business in Florida, states in section 320.27(10)(b) that the bond:
[S]hall be conditioned that the motor vehicle dealer shall comply with the conditions of any written contract made by such dealer in connection with the sale or exchange of any motor vehicle and shall not violate any of the provisions of Chapter 319 and this chapter in the conduct of the business for which the dealer is licensed. Such bonds and letters of credit shall be to the department and in favor of any person in a retail or wholesale transaction who shall suffer any loss as a result of any violation in the conditions hereinabove contained.
(Emphasis added).
Dealers Acceptance argues that it is included within the broad protection of the statute. Specifically, it asserts that because it provided financing for the retail purchase of motor vehicles and purchased the installment sales contracts, it was a vital part of the retail sales; therefore, it is a "person" in a "retail transaction" that suffered a loss. According to Dealers Acceptance, its loss resulted from Easy Ed's failure to deliver the title certificates to the three vehicles, contrary to sections 319.21, 319.23 and 320.27(7), Florida Statutes, which was partially responsible for the purchasers' default. Dealers Acceptance *530 claimed that after repossessing the cars, it incurred storage costs because it was unable to resell the vehicles without titles.
Contrary to appellant's argument, the statute does not express any intent to extend protection to automobile finance companies. The clear language of the statute and bond shows its purpose to protect the general car buying public from improper conduct of the licensed motor vehicle dealer. See United Pacific Ins. Co. v. Berryhill, 620 So.2d 1077 (Fla. 5th DCA 1993) (citing Interstate Sec. Co. v. Hamrick's Auto Sales, Inc., 238 So.2d 482 (Fla. 1st DCA 1970) and Smith v. Auto Owners Ins. Co., 462 So.2d 599 (Fla. 5th DCA 1985)). Section 320.27(10) provides that the bond shall be "in favor of any person in a retail or wholesale transaction who shall suffer any loss as a result of any violation of the conditions ..." described in the statute.
It is a principle of statutory construction that if the wording of a statute is not ambiguous, unreasonable or illogical, the words should be given their plain meaning. Palm Beach Community College Found., Inc. v. WFTV, Inc., 611 So.2d 588 (Fla. 4th DCA 1993). The word "retail," as defined in Black's means:

Retail, v. To sell by small quantities, in broken lots or parcels, not in bulk, directly to consumer. Sales made in minimal quantities to ultimate consumer to meet personal needs, rather than for commercial or industrial users ...

Retail, n. A sale for final consumption in contrast to a sale for further sale or processing (i.e.wholesale). A sale to the ultimate consumer.
Black's Law Dictionary 1135 (6th ed.1990).
The word "wholesale" is defined:

Wholesale. Selling to retailers or jobbers rather than to consumers. A sale in large quantity to one who intends to resell.
Black's Law Dictionary 1597 (6th ed.1990).
A plain reading of the statute leads us to conclude, as did the trial court, that the purpose of the bond is to protect consumers buying automobiles for their personal needs and retailers (dealers) buying automobiles for resale. The plaintiff, as a financier of installment contracts, is not a consumer of automobiles in either the retail or wholesale market; nor is it involved in a "retail or wholesale transaction."
Recently, in Automotive Fin. Corp. v. RWO, 734 So.2d 1104 (Fla. 2d DCA 1999), the second district traced the history of amendments to section 320.27(10) and concluded that a floor plan financier for a motor vehicle dealer had no standing to sue on the dealer's surety bond. Automotive had loaned money to RWO, a used car dealer, for the purchase of automobiles. RWO executed a promissory note and security agreement in favor of Automotive, obligating RWO to pay Automotive directly from the sale of the proceeds of used automobiles in RWO's inventory. RWO defaulted and Automotive learned that RWO, contrary to the terms of the contract, had sold automobiles from its inventory without directing the proceeds to Automotive. Automotive made a claim on the surety bond. Washington Insurance Company denied it. The trial court dismissed Automotive's complaint against Washington Insurance Company, finding that a floor plan financier was not an intended beneficiary of a surety bond issued under section 320.27(10). The second district upheld the dismissal and rejected Automotive's contention that it was involved in a "wholesale transaction" with RWO. It agreed with the trial court that the lending of money does not fall within the definition of a wholesale transaction. We find RWO indistinguishable from this case, which differs only in that the bond claimant here is a retail financier of vehicles, whereas Automotive was a wholesale floor plan financier.
Dealers Acceptance relies on Hamrick's Auto Sales for its position that the bond issued pursuant to section 320.27(10) should be broadly construed to run in favor of "any person." 238 So.2d 482. In *531 Hamrick's Auto Sales, the first district held that a person furnishing floor plan financing to an automobile dealer was covered under the statutory surety bond. However, as the second district noted in RWO, the subsequent amendment of the statute clarified the legislature's intent to exclude lending or financing transactions. The RWO court found Hamrick's Auto Sales distinguishable, stating:
When the Interstate Securities case [Hamrick's Auto Sales] was decided in 1970, the bond covered "any person." Subsequent amendments to the statute place[d] a more restrictive meaning on the class of persons covered by the bond so that it would not be as broad as the coverage of "any person." The [1977] change to "any retail customer" clearly shows that a floor plan financier was no longer covered by the bond. The [1985] change to "any retail or wholesale customer" expanded the coverage only to include wholesale transactions.
734 So.2d at 1105.
As United Pacific points out in this case, the obvious "nature of the transaction between the installment sales finance company and [Easy Ed's] was the sale of negotiable instruments," not a motor vehicle. There was no retail or wholesale transaction between Dealers Acceptance and Easy Ed's. Thus, we agree with the trial court's conclusion that Dealers Acceptance is not entitled to coverage under the United Pacific surety bond.
Accordingly, we affirm the summary judgment entered in favor of United Pacific.
AFFIRMED.
KLEIN, J. and SCOLA, ROBERT N., Jr., Associate Judge, concur.